# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARIA A. MELENDEZ,

       Plaintiff,

vs.                                                         No. CIV 02-1267 RHS

JO ANNE B. BARNHART, Commissioner
of  Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed July 2, 2003 [Doc. No.14].   The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.

      Plaintiff, age 43, alleges a disability which commenced August 2, 1997  due to depression, status post cervical discectomy and fusion, and arm and leg numbness.  The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") also denied the applications, concluding that there were jobs existing in significant numbers that Ms. Melendez could perform.   The Appeals Council denied  review of the ALJ's decision, thus  the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

At the time of the Commissioner's final decision, claimant was 41 years old, with a G.E.D. Her past relevant work was as a phone room and bar manager, inventory auditor, and telemarketer. Tr. at 103-107.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

Plaintiff raises four issues on appeal. Ms. Melendez claims the ALJ erred by finding that Plaintiff's allegations of limitations were not credible, by finding that Plaintiff has the ability to perform a limited range of light work, by finding that Plaintiff's mental impairment was not severe and by relying on vocational expert testimony not supported by substantial evidence.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).   At the first four levels of the evaluation, the claimant must show:  (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth

step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

The ALJ denied Plaintiff's case at step five of the sequential evaluation process. Based on the testimony of a vocational expert, the ALJ found that Ms. Melendez could perform other jobs existing in significant numbers in the regional or national economies. Tr at 20.

On March 23, 1995, Plaintiff had anterior cervical fusion at C5-6 performed. Tr. at 196. On August 2, 1997, Ms. Melendez was involved in traffic accident which caused a fracture of a previous C5-6 fusion and of the anterior cervical plate which had been inserted at the time of the first surgery. Tr. at180. Dr. Wayne Wittenberg performed another fusion surgery and inserted two cervical plates. Tr. at 174-186. Postoperatively, Plaintiff complained of back pain and a weakness in her right arm and shoulder which limited her ability to raise her right arm. Tr. at 139-140. Her doctor prescribed pain medication, muscle relaxants and physical therapy. Tr. at 133-144.

Plaintiff was also treated at San Miguel-Mora-Guadalupe Community Mental Health Services for depression. She received several psychotherapy sessions in 1998, 1999 and 2000 and antidepressant and anti-anxiety medications were prescribed for her. Tr. at 200-209, 236-300.

**First Alleged Error**

Plaintiff contend that the ALJ's finding that her complaints of pain and limitations are not credible is erroneous. The ALJ found that Plaintiff's credibility was "compromised by her excessive pain behavior, her failure to comply with mental treatment, her excessive subjective disabling assertions to examining sources, the evidence of ongoing substance abuse, and the lack of evidence indicating a rapidly deteriorated medical state." Tr. at 19. Ms. Melendez argued that

the factors used by the ALJ in his credibility determination are unsupported or contradicted by the record.

To qualify as disabling, pain must be severe enough--either by itself or in combination with other impairments--to preclude any substantially gainful employment. See Brown v. Bowen, 801 F.2d 361, 362-362 (10th Cir. 1986).  The Tenth Circuit has enumerated the following factors to consider when analyzing a claimant's pain evidence:  " (1) [W]hether Claimant established a pain producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992) (citing Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987)).

Although Plaintiff submitted objective medical evidence of a pain producing impairment and demonstrated a loose nexus between the impairment and her pain, the ALJ found that the objective evidence did not establish disabling pain.  Accordingly, the ALJ had to evaluate Plaintiff's subjective pain testimony to determine how much her pain impaired her ability to perform work activity.

"When determining the credibility of pain testimony, the ALJ should consider such factors as 'the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.'" Thompson v. Sullivan,

987 F.2d 1482, 1489 (10th Cir. 1993) (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991) (quoting Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988)).

Ms. Meledrez testified that she had pain in her neck, her upper back, her head, her arms, her hands, her lower back, her legs, her knees, her heels and her ankles. Tr. at 51-53. She agreed with the ALJ's statements that "you have pain everywhere" and "...everything that's wrong with you is all the time and everyday." Tr. at 53. She stated that she could walk for ten minutes, stand for five to ten minutes and sit for fifteen minutes at a time. Tr. at 54-55. She said that she was able to do laundry, sweep, do dishes, make the bed and drive occasionally. Tr. at 57-58.

Plaintiff repeatedly received prescriptions for pain medication from her treating physician, Dr. Wittenberg. He also prescribed physical and massage therapy for her neck, shoulder and arm pain, Tr. at 133, 135, but the record indicates that therapy was discontinued "secondary to her canceling numerous appointments," Tr. at 158.

Dr. Karyn Rae Doddy performed a consultative examination on October 14, 1998. Dr. Doddy noted that Ms. Melendez "engage[d] in severe pain behavior throughout most of the interview and examination." Tr at 220. Her diagnoses included chronic dependance upon sedative and narcotic medication and deconditioning. Tr. at 221. Dr. Doddy limited Plaintiff to lifting 10 pounds frequently, 25 pounds occasionally, and 20-30 minutes of standing or walking at a time. Tr. at 224, and stated that "it would be in [Plaintiff's] best medical interests to increase her level of activity in a structured [manner] such as provided by a light duty employment." Tr. at 225.

The consultative examination, the failure to follow through with physical therapy and Plaintiff's testimony regarding pain "everywhere" are supportive of the ALJ's finding that Plaintiff's credibility was compromised by excessive pain behavior and excessive subjective disabling assertions. It was not error for the ALJ to consider that evidence.

The ALJ also found that Plaintiff's failure to comply with mental treatment was inconsistent with her allegations of mental impairment. At the hearing, Plaintiff testified that she is "usually constantly in tears." Ms. Melendez claims that her ongoing treatment at San Miguel-Mora-Guadalupe Community Mental Health Services is evidence of her credibility concerning the severity of her depression.

The ALJ noted that Plaintiff had missed nine appointments with her mental health clinic between January 2000 and June 2000. Tr. at 17  He observed that on June 7, 2000, Ms. Melendez complained about her prescribed medications but failed to appear for a scheduled appointment the very next day. Id.  The ALJ concluded that her actions were a valid self-assessment on her part that her symptoms were not as severe as asserted. Id. The ALJ's finding that Plaintiff failed to comply with mental treatment is supported by the record.

Ms. Melendez also argues that there is no evidence of ongoing substance abuse and that factor should not have been considered by the ALJ in making his credibility determination. While the record is inconsistent, Plaintiff discussed her use of alcohol and cocaine with several of the mental health professionals. Plaintiff relies upon Dr. Michael Gzaskow's September 16, 2000 report of his consultative psychiatric examination of Ms. Melendez which included a diagnostic impression of polysubstance dependence on alcohol/cocaine-in remission and noted that her last reported alcohol abuse was in May 2000. Tr. at 305. The hearing in this case was held on April 20, 2000. The report does not contradict the ALJ's observation that ongoing substance abuse might impact Plaintiff's believability, but instead provides some support for including that factor in his credibility determination.

The record and the transcript of the hearing generally support the ALJ's reasons for finding the Plaintiff's allegations regarding the severity of her pain and her mental limitations were not

credible. Credibility determinations are peculiarly the province of the finder of fact, and such a determination should not be upset when supported by substantial evidence. Diaz v. Sec'y of Health & Hum Servs., 898 F.2d 774, 777, cited in Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). There is substantial evidence to support the ALJ's credibility determination in this case and the Court will defer to the ALJ's findings on this issue.

**Second Alleged Error**

Plaintiff argues that the ALJ's finding that she has the ability to perform a limited range of light work is erroneous. Ms Melendez contends that the ALJ improperly relied on the opinions of non-examining doctors in reaching that conclusion.

Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. Their opinions can be given weight only insofar as they are supported by evidence in the case record. SSR 96-6p ("Policy Interpretation")

The ALJ relied on the December 1988 residual functional capacity ("RFC") assessment done by a non-examining consultative physician to support his finding that Plaintiff was capable of light work. However, the ALJ specifically stated that he did not rely exclusively on the opinion of the non-examining consultant but that he also found that the RFC result was independently seconded by examining sources. Tr. at 19.

Plaintiff argues that her treating physician, Dr. Wittenberg, twice stated that Ms. Melendez should remain off work until further notice. Tr. 160, 183. These "Release to remain off work" forms are dated August 8, 1997 (the date of Plaintiff's surgery) and September 10, 1997. She also

argues that controlling weight should be given to Dr. Wittenberg's April 22, 1998 opinion that she was disabled due her residual pain. Tr. at 138

A treating physician's opinion generally is favored over that of a consulting physician. See Reid v.Chater, 71 F.3d 372, 374 (10th Cir. 1995) (citation omitted) Id. However, "[t]he treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant ... relative to other medical evidence before the fact-finder, including opinions of other physicians." Id. (citation omitted).

The ALJ reviewed other medical evidence including the July 2, 1998 treatment notes from Dr. Wittenberg which stated that Plaintiff had good range of cervical motion, intact strength and reflex responses and that "overall, her condition looks quite good," Tr. at 18, 136.  The ALJ observed that Dr. Wittenberg's July examination appeared to reflect improvement of Plaintiff's condition and that the October consultative examination which concluded that Plaintiff could perform a range of light work activities showed "steady progress" towards recovery. Tr. at 18, 219-225. The ALJ found that Dr. Wittenberg's April 1998 opinion regarding Plaintiff's disability was overturned by subsequent evidence. Tr. at 19.      A treating physician's opinion is not dispositive on the ultimate issue of disability.   See Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994).  The ALJ set forth specific and legitimate reasons for disregarding Dr. Wittenberg's April 22, 1998 opinion that Plaintiff was disabled due to residual pain.

Plaintiff also argues that her allegations of disability are supported by Dr. Gzaskow's September 2000 report which stated that Plaintiff's ability to relate to others was compromised by chronic pain and depression. Tr. at 306.  Dr. Gzaskow's report also stated that Plaintiff could

understand and follow directions and that she could attend to simple tasks. Id. These opinions are not inconsistent with the ALJ's finding that Ms. Melendez is not totally disabled.

The assessment of RFC is reserved solely to the ALJ. SSR 96-5p; 20 C.F.R. §§ 404.1527(e)(2); 404.1546 (2003). Substantial evidence supports the ALJ's finding that Ms. Meledrez retains the ability to perform a limited range of light work.

**Third Alleged Error**

Plaintiff argues that the ALJ improperly found Plaintiff's mental impairment was not severe at step two of the sequential evaluation. Ms Melendez contends that the ALJ relied too heavily on the reports of non-examining physicians to make that determination. She also alleges that the ALJ erroneously discounted opinions from treatment sources because they were based on Plaintiff's subjective assertions. Plaintiff claims that the ALJ should have either recontacted her treating sources or ordered a consultative examination.

A severe mental impairment is a non-exertional limitation that must be considered by the Commissioner if there is evidence to support the existence of the impairment. Cruse v. U.S. Dep't of Health &Hum. Serv., 49 F.3d 614, 619 (10th Cir.1995); Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991); Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988). A claimant's mental impairment must also be evaluated in combination with the effects of other impairments. Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991).

Plaintiff was treated by mental health specialists at the San Miguel-Mora-Guadalupe Community Mental Health Services. She received therapy and prescriptions for antidepressants. On September 5, 2000, the Commissioner referred Ms. Melendez to Dr. Michael Gzaskow for a consultative psychiatric examination. Dr. Gzaskow opined that Plaintiff was experiencing a major depression disorder, recurrent, severe Tr.at 301. He stated that Ms.

Melendez could understand and follow directions and could attend to simple tasks. Tr. at 306. He related that Plaintiff stated that she could not withstand the stress and pressures associated with day-to-day work activity, based on the her chronic pain and depression. Id.

The ALJ also relied on the opinions expressed by Geoffrey Sutton, Ph.D. in a Psychiatric Review Technique Form (SSA-2506-BK) that tracks the procedure set forth in 220 C.F.R.§ 404.1520a. This procedure first requires a determination of the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2). The degree of functional loss resulting from the impairment is then quantified, using the "Part B" criteria. 20 C.F.R. § 404.1520a(b)(3). The reviewing State agency mental health expert compared the evidence concerning Plaintiff's mental impairment with the criteria listed described in the Listing of Impairments and found that there was insufficient evidence that Plaintiff's symptoms met the specific diagnostic criteria for depressive syndrome. Tr.at 213. The Part B analysis was continued, however, based on the diagnosis of major depression, and concluded that Ms. Melendez had only slight functional restrictions on her activities of daily living, slight difficulties in maintaining social functioning, and seldom had deficiencies of concentration, persistence or pace. The consultant found that there was insufficient evidence regarding episodes of deterioration or decompensation. Tr.at 217.

The ALJ found that substantial supporting evidence justifying the conclusions of the PRT exists. Tr. at 16. He noted that the record contains no references to crisis events, a need for hospitalization or similar intensive intervention. Tr. at 17. He observed that Plaintiff's treatment records describe her as non-compliant on January 18, 2000, and that she subsequently missed at least nine scheduled appointments. Id. He pointed out that on June 7, 2000, Plaintiff complained

that she was not receiving the benefit from her prescribed medication, Tr. at 287-288, but that she failed to appear for her appointment the following day. Tr. at 17, 236-237. He reasoned that her actions were "a valid self-assessment on her part that her symptoms are not as severe as asserted."Id.

Plaintiff argues that the ALJ should have ordered a consultative examination. The ALJ did order the psychiatric examination which was performed by Dr. Gzaskow. Tr. 301-306. The Commissioner has made every reasonable effort to obtain information concerning Plaintiff's mental condition. A qualified psychologist completed the medical portion of the case review and the applicable residual functional capacity assessment. See 42 U.S.C. §421(h), Hill v. Sullivan, 924 F.2d 972, 973-74 (10th Cir. 1991). A qualified psychiatrist completed an interview and examination of Ms. Melendez. No further consultative examination was required.

Plaintiff also argues that the ALJ should have considered the effect of her mental impairment on her residual functional capacity. She contends that Dr. Gzaskow's determination that she had a Global Assessment of Functioning (GAF)[1] score of 50 is evidence of serious symptoms indicating problems with keeping a job. Tr. 301. The GAF rating may actually indicate problems that do not interfere with the ability to work. The ALJ considered Dr. Gzakow's report along with the other medical evidence. It was not error for the ALJ to find that Ms. Melendez was capable of performing work despite her GAF score of 50.

---

[1]The GAF is used to report "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994). The GAF scale defined the range from 41-50 as "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." Id. at 34.

Finally, Plaintiff argues that subsequent evidence submitted to the Appeals Council regarding a May 25, 2001 evaluation by psychologist Gerald Russell supports a finding of severe mental impairment.  In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the record as a whole, including the additional materials submitted to the Appeals Council. See O'Dell v. Shalala, 44 F.3d 855, 858, 859 (10th Cir.1994). Dr. Russell's evaluation of Plaintiff took place four months after the ALJ's decision.  Because the additional evidence was not related back to the period on or before the date of the administrative law judge hearing decision, the Court cannot consider the report as evidence of Plaintiff's mental state during the adjudicated period. Proffered evidence must be related to the time period for which the benefits were denied.  Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991).

The ALJ properly considered all the evidence of record and determined that Ms. Melendez did not have a severe mental impairment.  His decision is supported by substantial evidence.

**Fourth Alleged Error**

Plaintiff alleges that the ALJ erred by relying on vocational expert testimony to establish that there were a significant number of jobs that she could perform. The ALJ posed several hypothetical questions which were answered by the VE, however, the ALJ did not ask the VE for the source of his information regarding his testimony. Ms. Melendez contends that one of the occupations identified by the VE no longer exists or that it now requires computer experience which she does not have.  She also argues that another job the VE said she could perform based on her RFC requires fine manipulation that she is unable to accomplish.

Before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of non-disability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles

("DOT"), and elicit a reasonable explanation for any discrepancy on this point. <u>Haddock v. Apfel</u>, 196 F.3d 1084 (10th Cir.1999). The ALJ did not ask the VE about the source of the VE's job description or inquire about corresponding DOT listings. The Commissioner argues that if there is no contradiction between the DOT's description of the jobs identified and Plaintiff's RFC, then the failure of the ALJ to ask the vocational expert to identify the source of the information provided should be considered harmless error.

The Administration has explained that "occupational evidence provided by a VE...generally should be consistent with the occupational information supplied by the DOT. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (S.S.A.) The ALJ did not make the required inquiry, the VE's testimony did not refer to the DOT and the Court does not have sufficient information to determine if a conflict exists. Accordingly, this case must be remanded for further proceedings on that limited issue.

**Conclusion**

The ALJ findings regarding Plaintiff's credibility, residual functional capacity and the severity of her mental impairment are not erroneous. The Court will not require the Commissioner to reconsider these issues. However, the agency's own regulations require the ALJ to ask the VE how his testimony concerning identified jobs corresponds with the DOT. The ALJ erred when he failed to do so.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing is GRANTED. On remand, the ALJ must determine the source of information the VE uses to determine jobs that Ms. Melendez can perform, ask the VE for DOT occupational code

numbers for those jobs, and address any contradiction between the DOT's and the VE's description of the exertional and skill requirements of those jobs.

*Robert Hayes Scott*
UNITED STATES MAGISTRATE JUDGE